NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

13-P-1735                                         Appeals Court

    COMMONWEALTH  vs.  FRANCISCO L. UBEIRA-GONZALEZ.


No. 13-P-1735.

Hampden.     October 2, 2014. - January 22, 2015.

Present:  Grasso, Kantrowitz, & Meade, JJ.


Controlled Substances.  Constitutional Law, Plea, Conduct of
    government agents.  Due Process of Law, Plea.  Evidence,
    Guilty plea.  Practice, Criminal, Plea, Conduct of
    government agents, Assistance of counsel.



    Complaints received and sworn to in the Holyoke Division of
the District Court Department on October 19 and November 4,
2009.

    Motions for a new trial, filed on March 27, 2013, were
heard by Philip A. Beattie, J.


    Jane Davidson Montori, Assistant District Attorney, for the
Commonwealth.
    Daniel J. Ciccariello for the defendant.


    MEADE, J.  In 2010, the defendant pleaded guilty to several

crimes, including possession of a class A controlled substance

with the intent to distribute.[1]  In 2012, the defendant was charged in Federal court with distribution of a controlled substance.  Following his arraignment in Federal court, the defendant moved to withdraw his 2010 guilty pleas to his State convictions.  The defendant's motions were based on alleged misconduct by an assistant analyst at the State laboratory in Amherst (Amherst laboratory).  Without conducting an evidentiary hearing or making findings, the motion judge (who was also the plea judge) allowed the defendant's motions.  The Commonwealth appeals and claims the judge erred by allowing the motions.  We agree and reverse.

1.  Background.  a.  Procedural history.  In October of 2009, the defendant was charged with possession of a class A controlled substance (October case).  Less than one month later, in November of 2009, the defendant was again charged with possession of a class A controlled substance, possession with intent to distribute a class A controlled substance, resisting arrest, and assault and battery on a police officer (November case).  In February of 2010, the defendant pleaded guilty to the above charges, except for the possession of a class A controlled substance charge in the November case, which the Commonwealth dismissed.

_____

[1] The pleas were entered in two Holyoke District Court cases:  docket no. 0917CR003063 and docket no. 0917CR003249.

In May of 2012, the defendant was charged in the United States District Court for the District of Massachusetts with distribution of a controlled substance.  In March of 2013, the defendant moved to withdraw his guilty pleas in the October and November cases.  In his affidavits in support of the motions, the defendant claimed that his guilty pleas were not made intelligently and voluntarily because he and his attorney were not aware of the alleged misconduct of Sonja Farak, an assistant analyst at the Amherst laboratory who analyzed the narcotics in the October case.  The defendant also claimed that he was not shown the certificate of drug analysis (drug certificate) in either case.  However, at the time of his guilty pleas, a drug analysis had yet to be performed on the narcotics from the November case and the defendant instead stipulated that the 206 unanalyzed packets contained heroin.[2]  Nonetheless, in his affidavit in support of his motion for new trial in the November case, the defendant claimed "the analyst of the evidence in my case has engaged in material misconduct . . . and thus place[s] the validity of the evidence in my case in serious doubt." After a nonevidentiary hearing, the judge allowed each motion with an endorsement.

---

[2] In his affidavits in support of the motions to withdraw his guilty pleas, the defendant claimed he "was advised that the Commonwealth had established beyond a reasonable doubt that the substance was heroin and that [he] should accept the plea recommendation."

b. <u>Crimes</u>. In the October case, the defendant was a passenger in a car that was stopped for a civil infraction. He was not wearing a seat belt. When the police officers ascertained the defendant's identity in order to issue him a citation, they discovered an outstanding warrant for his arrest. During an inventory of his possessions at the police station, an officer found four glassine bags of heroin in the defendant's sock. As stated above, the heroin was analyzed at the Amherst laboratory on December 21, 2009, by Farak.

In the November case, the police approached and spoke to the defendant, who was standing on a Holyoke street corner. A State trooper who was present recognized the defendant as someone with whom he had had "contact" several days earlier. An inquiry to the warrants management system revealed an outstanding arrest warrant for the defendant. When the trooper attempted to handcuff the defendant, the defendant struck the trooper in the face and attempted to flee. A violent struggle ensued and continued until backup officers arrived and handcuffed the defendant. After the defendant was transported to the police station, 206 packets of heroin were found on the seat of the police cruiser. At booking, the police recovered $1,308 from the defendant.

c. <u>Laboratory misconduct</u>. Attached to the Commonwealth's opposition to the defendant's motions were two police reports.

According to one report, on January 18, 2013, the State police began an investigation of the Amherst laboratory, which focused on Farak.  That investigation revealed Farak's mishandling of drug samples, improper storage of drug samples, and a belief that Farak had been removing narcotics from samples she had tested and replacing them with counterfeit substances.  We take judicial notice of the fact that on January 6, 2014, Farak pleaded guilty to four counts of theft of a controlled substance from an authorized dispensary, four counts of tampering with evidence, and two counts of possession of a controlled substance.[3]

2.  Discussion.  "A plea of guilty and the ensuing conviction comprehend all of the factual and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence."  United States v. Broce, 488 U.S. 563, 569 (1989).  "A motion to withdraw a guilty plea is treated as a motion for a new trial under Mass.R.Crim.P. 30(b), as appearing in 435 Mass. 1501 (2001)."  Commonwealth v. Furr, 454 Mass. 101, 106 (2009).  "A strong policy of finality limits the grant of new trial motions to exceptional situations, and such motions should not be allowed lightly."  Commonwealth v. Gordon, 82 Mass. App. Ct. 389, 394 (2012).  See Commonwealth v. Lopez, 426

[3] We may take judicial notice of court records in related proceedings.  Jarosz v. Palmer, 436 Mass. 526, 530 (2002).  See Mass. G. Evid. § 201(b)(2) (2014).

Mass. 657, 662-663 (1998). Nonetheless, "[u]nder Mass.R.Crim.P. 30(b), a judge may grant a motion for a new trial any time it appears that justice may not have been done. A motion for a new trial is thus committed to the sound discretion of the judge." Commonwealth v. Scott, 467 Mass. 336, 344 (2014). See Commonwealth v. Hunt, 73 Mass. App. Ct. 616, 619 (2009).

Here, the Commonwealth claims the judge erred by granting the defendant's motions to withdraw his guilty pleas without holding an evidentiary hearing. The Commonwealth further claims that the motions should have been denied without an evidentiary hearing where the defendant failed to demonstrate that any laboratory misconduct affected his two cases or that plea counsel was ineffective. We agree with both claims.

a. Laboratory misconduct. We begin by noting that the judge had the discretion to deny the motions based on the defendant's affidavits. See Commonwealth v. Stewart, 383 Mass. 253, 257 (1981). Indeed, "[t]he judge may rule on the issue or issues presented by such motion on the basis of the facts alleged in the affidavits without further hearing if no substantial issue is raised by the motion or affidavits." Mass.R.Crim.P. 30(c)(3), as appearing in 435 Mass. 1502 (2001). However, as in Commonwealth v. Gordon, supra, the judge in this case took the remarkable step of granting the motions without holding an evidentiary hearing. Indeed "[a] judge's power to

grant such a motion on the papers is more circumscribed." Ibid. If a judge is inclined to grant such a motion, he or she must first conclude that it raises a substantial issue which would necessitate an evidentiary hearing.[4] See Commonwealth v. Stewart, supra. See also Mass.R.Crim.P. 30(c)(3). At the very least, "[h]olding an evidentiary hearing provides the Commonwealth the opportunity to challenge the evidence presented in the affidavits." Commonwealth v. Gordon, supra at 395. See Commonwealth v. Almonte, 84 Mass. App. Ct. 735, 738 (2014), quoting from Reporters' Notes to Rule 30(c)(3), Mass. Ann. Laws Court Rules, Rules of Criminal Procedure, at 1662 (LexisNexis 2013-2014) (when a substantial issue arises, "the established 'better practice' has been to conduct an evidentiary hearing").

Furthermore, the defendant "bears the burden of proof on a motion for a new trial," Commonwealth v. Marinho, 464 Mass. 115, 123 (2013), and it is the defendant's burden to prove facts that are "neither agreed upon nor apparent on the face of the record." Commonwealth v. Comita, 441 Mass. 86, 93 (2004), quoting from Commonwealth v. Bernier, 359 Mass. 13, 15 (1971). See Commonwealth v. Wheeler, 52 Mass. App. Ct. 631, 637 (2001)

---

[4] We do not hold that a motion for new trial may never be granted without an evidentiary hearing. If the substantial issue raised by the motion is solely a question of law based on undisputed facts, an evidentiary hearing may not be necessary. Commonwealth v. Gordon, supra at 395. But if the motion does not raise a substantial issue, neither holding an evidentiary hearing nor granting relief is appropriate.

("The defendant has the burden of producing a credible reason to reverse the final decision, arrived at after trial or plea, that outweighs the risk of prejudice to the Commonwealth").

When a defendant pleads guilty, "two constitutional requirements are necessary to assure that a counseled plea is valid:  the defendant's choice must be voluntary and intelligent."  Commonwealth v. Hunt, 73 Mass. App. Ct. at 619. See Tollett v. Henderson, 411 U.S. 258, 267 (1973); Bousley v. United States, 523 U.S. 614, 618 (1998).  Here, the defendant did not take issue with his plea colloquies, his understanding of the nature of the charges, or the consequences of the pleas. Rather, he claimed that his guilty pleas were not intelligent and voluntary due to Farak's alleged malfeasance, which came to light in 2013.

The only support for the defendant's motions to withdraw his guilty pleas were his own self-serving affidavits.  In those affidavits, the defendant claimed he was not shown the drug certificates by his counsel.  He also averred that his counsel advised him that the identity of the substances (as an element of the crime) was not in doubt, and that the substances had been established to be heroin.  The defendant's motions were not accompanied by any drug certificate.  However, the Commonwealth's opposition did provide a certificate for the October case, which revealed the assistant analyst to be Farak.

The defendant submitted nothing relative to the analysis of the substance in the November case.

In this posture, there was no support for any claimed laboratory misconduct involving the defendant's November case for possession with intent to distribute a class A controlled substance. Indeed, there is no evidence that the 206 packets had even been analyzed before the defendant stipulated that they contained heroin when he pleaded guilty. That guilty plea was more than a mere admission. See Brady v. United States, 397 U.S. 742, 748 (1970). See also Boykin v. Alabama, 395 U.S. 238, 242 n.4 (1969) ("A plea of guilty is more than a voluntary confession made in open court. It also serves as a stipulation that no proof by the prosecution need be advanced . . . . It supplies both evidence and verdict, ending controversy" [citation omitted]). Thus, there was no evidence of governmental misconduct involving the November case which could have created a substantial issue for the judge to address.[5] See

_____

[5] In his November case, the defendant also pleaded guilty to resisting arrest (the lead count in the complaint) and assault and battery on a police officer. Even though the defendant's motion, affidavit, and supporting memorandum of law for the November case made no claim relative to the invalidity of those pleas, the judge granted a new trial on those convictions as well. Having not been raised in his motion for new trial, any argument relative to those convictions should have been viewed as waived. See Mass.R.Crim.P. 30(c)(2), as appearing in 435 Mass. 1501 (2001). Moreover, the defendant has also made no argument in his brief to this court or at oral argument as to how Farak's misconduct tainted those convictions. To the extent

Commonwealth v. Gordon, 82 Mass. App. Ct. at 395-396, quoting from Reporters' Notes to Rule 30(c)(3), Mass. Ann. Laws Court Rules, Rules of Criminal Procedure, at 1641 (2011-2012) ("In determining whether the motion raises a substantial issue which merits an evidentiary hearing, the judge should look not only at the seriousness of the issue asserted, but also to the adequacy of the defendant's showing").

The October case stands on a different footing because Farak was the assistant analyst for the possession of heroin charge. But that fact alone does not end the matter. To evaluate the propriety of the judge granting the motion in the October case, we utilize the United States Court of Appeals for the First Circuit's analysis in Ferrara v. United States, 456 F.3d 278, 290 (1st Cir. 2006), which has been adopted by the Supreme Judicial Court in Commonwealth v. Scott, 467 Mass. at 346.

"Under the Ferrara analysis, the defendant first must show that egregious government misconduct preceded the entry of his

---

the claims are not waived, we are at a loss, especially without findings from the judge, to conjure any justification for the grant of a new trial on these convictions. Allowing a motion for new trial without making findings runs afoul of Mass.R.Crim.P. 30(b), which states that the judge "shall make such findings of fact as are necessary to resolve the defendant's allegations of error of law" (emphasis supplied). See Commonwealth v. Almonte, 84 Mass. App. Ct. at 739. In contrast, a one-word ruling labors "under suspicion of arbitrariness." Id. at 740.

guilty plea and that it is the sort of conduct that implicates the defendant's due process rights." Id. at 347. See Ferrara v. United States, supra at 290, 291. This requires more than a defendant simply misjudging the Commonwealth's case, but rather he must show that his "guilty plea was preceded by 'particularly pernicious' government misconduct that was the source of the defendant's misapprehension of some aspect of his case." Commonwealth v. Scott, supra at 347, quoting from Ferrara v. United States, supra at 291.

There can be no question that Farak's removal of narcotics from samples she had tested and replacing them with counterfeit substances constituted "egregious misconduct" by the government. Although Farak's motives and the scale of her misconduct on this record differed from that of Annie Dookhan's in the Hinton laboratory cases, see Commonwealth v. Scott, supra at 337 & n.3, Farak's conduct nonetheless caused damage to the criminal justice process. Also, like Dookhan, Farak was a government agent. See id. at 348-350. But the similarities end there. Under the first prong of the Ferrara analysis, a defendant "must demonstrate that the misconduct occurred in his case." Id. at 350. In other words, "a defendant seeking to vacate a guilty plea under Mass.R.Crim.P. 30(b), on the ground that government misconduct rendered the plea involuntary, . . . is required to

show a nexus between the government misconduct and the defendant's own case."  Id. at 351.[6]

Here, the defendant offered no evidence indicating that Farak's misconduct occurred before the defendant's guilty plea. The only evidence on this point appears in a police report appended to the Commonwealth's memorandum in opposition to the defendant's motion, and it indicates that Farak's misconduct occurred in 2013 -- more than three years after Farak analyzed the heroin in the defendant's case.  In other words, under the Ferrara analysis, the defendant failed to make the preliminary showing that the "egregious government misconduct preceded the entry of his guilty plea."  Commonwealth v. Scott, 467 Mass. at 347 (emphasis supplied).[7]  The defendant's claim that the Commonwealth failed to provide the judge with any evidence that

---

[6] In Commonwealth v. Scott, 467 Mass. at 352, for cases where Dookhan was the analyst, the Supreme Judicial Court created a "conclusive presumption that egregious government misconduct occurred in the defendant's case."  The court emphasized that the rule was "sui generis."  Id. at 353.  In cases where Dookhan was not the analyst, the defendant is not relieved of his burden to establish each element of the Ferrara analysis.  See id. at 354.

[7] The defendant also claims the revelation of Farak's misconduct constituted newly discovered evidence.  While this may be true, it did not cast any real doubt on the justice of the defendant's conviction where he failed to show Farak's misconduct occurred in his case.  See Commonwealth v. Pike, 431 Mass. 212, 218 (2000) ("A defendant seeking a new trial on the basis of newly discovered evidence must establish both that the evidence is newly discovered and that it casts real doubt on the justice of the conviction").

Farak's misconduct did not precede the defendant's guilty pleas misperceives the burden of proof. It is the defendant who bears the burden of proof on a motion for new trial. See Commonwealth v. Marinho, 464 Mass. at 123. See also Commonwealth v. Chatman, 466 Mass. 327, 333 (2013) ("The defendant has the burden of proving facts upon which he relies in support of his motion for a new trial"). Due to the defendant's failure to sustain his burden of proof, his claim fails under the first prong of the Ferrara analysis. Given this result, we need not address the second prong of the Ferrara analysis.[8]

b. Assistance of counsel. The Commonwealth also claims that the defendant failed to sustain his burden of proving that

---

[8] Under the second prong of the Ferrara analysis, a defendant must demonstrate a reasonable probability that he would not have pleaded guilty had he known of the government's misconduct. Commonwealth v. Scott, 467 Mass. at 354-355. See Ferrara v. United States, 456 F.3d at 290, 294. It is significant that the defendant did not aver this in his affidavit; an averment the Supreme Judicial Court has described as a "minimum" for establishing prejudice. Commonwealth v. Scott, supra at 356. We further note the favorable disposition the defendant received. In the November case, the defendant was sentenced to one year in the house of correction on each conviction: resisting arrest, assault and battery on a police officer, and possession of a class A controlled substance with the intent to distribute. In the October case, the defendant was sentenced to sixty days in the house of correction on his conviction of possession of a class A controlled substance. All sentences were to be served concurrently. In addition, the defendant was given credit for the 111 days during which he was held for trial. With this disposition in mind, under the second prong, the defendant would have had to "convince the court that a decision to reject the plea bargain would have been rational under the circumstances." Ibid., quoting from Commonwealth v. Clarke, 460 Mass. 30, 47 (2011).

plea counsel was ineffective.  Specifically, the defendant claimed that counsel faltered by allowing him to plead guilty without having a drug certificate in the November case.

Ineffective assistance of counsel requires "behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer," which "likely deprived the defendant of an otherwise available, substantial ground of defen[s]e."  Commonwealth v. Saferian, 366 Mass. 89, 96 (1974).  The defendant must demonstrate that "better work might have accomplished something material for the defense."  Commonwealth v. Satterfield, 373 Mass. 109, 115 (1977).

The defendant's motion and affidavit did not provide any evidence, or even suggest, that at the time he pleaded guilty, his attorney was aware of any misconduct at the Amherst laboratory.  In fact, Farak's misconduct did not come to light until several years after the defendant pleaded guilty.  Because we must evaluate counsel's conduct based on what was known at the time,[9] see Strickland v. Washington, 466 U.S. 668, 689 (1984), we cannot say that his attorney's choice to proceed with the pleas based on what he knew (even without a drug analyst's certificate) called into question his performance on an actionable level.  Indeed, it is not as if the defendant was

---

[9] The defendant's motions were not supported with an affidavit from his attorney.

without personal knowledge of the contents of the 206 packets at issue.  As such, the defendant's claim fails to establish the first prong of the Saferian test, and we need go no further.[10]

> Orders granting motions for
> new trial reversed.

---

[10] Relative to prejudice, we note only that the Ferrara "reasonable probability" standard "mirrors our formulation of the test for prejudice in cases in which a defendant claims that counsel's ineffective assistance induced the defendant to plead guilty."  Commonwealth v. Scott, 467 Mass. at 356.  This, as stated above, includes at a minimum the defendant's averment (absent here) that he would not have pleaded guilty had he known of the misconduct at issue.  See note 8, supra.