APPEALS COURT 
 
 COMMONWEALTH vs. KEVIN PORTER

 
 Docket:
 24-P-526
 
 
 Dates:
 December 16, 2024 – April 25, 2025
 
 
 Present:
 Henry, Desmond, & Englander, JJ.
 
 
 County:
 Middlesex
 

 
 Keywords:
 Assault and Battery by Means of a Dangerous Weapon. Due Process of Law, Indictment placed on file, Sentence, Probation revocation, Notice, Vagueness of order. Evidence, Hearsay. Practice, Criminal, Indictment placed on file, Revocation of probation, Hearsay. Words, "Similar."
 
 

       Indictment found and returned in the
Superior Court Department on August 28, 2008.
      A motion for sentencing on a plea of
guilty to an indictment placed on file, filed on December 16, 2022, was heard
by Shannon Frison, J.
      Catherine B. Sullivan Ledwidge for the
defendant.
      Timothy Ferriter, Assistant District
Attorney, for the Commonwealth.
      ENGLANDER, J.  This case requires us to address the
procedures and standards for removing criminal convictions from "the
file."  In 2011 the defendant
pleaded guilty to three charges, the most serious of which was manslaughter; at
that time the defendant also pleaded guilty to assault and battery by means of
a dangerous weapon causing serious bodily injury (ABDW-SBI).  As part of sentencing the ABDW-SBI conviction
was placed on file; the defendant was told that conviction would be removed
from the file if he committed a "similar infraction," prior to the
termination of his probation.[1]
      In 2020, and again in 2022, the defendant
was involved in incidents that resulted in criminal charges against him -- one
in which he threatened two women in a sober home in New Hampshire, and another
where he battered a fellow inmate in the Middlesex house of correction.  The Commonwealth thereafter moved to sentence
the defendant on the filed ABDW-SBI charge from 2011.  The judge found that the defendant had
committed a "similar offense," and the defendant was sentenced to
eighteen months in prison on the ABDW-SBI charge.
      On appeal, the defendant challenges the
judge's determination that he committed a "similar offense" to his
underlying conviction, pointing out that ABDW-SBI contains distinct elements
from the offenses for which he was charged in 2020 and 2022.  The defendant also argues that he was
entitled to but did not receive due process protections similar to those
provided in a probation violation hearing, and that the condition placed on the
filing of his ABDW-SBI charge was unconstitutionally vague.
      As discussed below, we look to the process
of probation violation hearings to provide the applicable standards here, where
the Commonwealth moved to sentence the defendant on a filed case based on the
violation of an express condition.  The
judge followed the appropriate process in this case, however, and applied
appropriate standards.  Furthermore, the
judge did not err in determining that the defendant's conduct was within the
scope of a "similar infraction" to his 2011 offense, and the
condition was not unconstitutionally vague. 
We affirm.
      Background.  In October of 2011, the defendant pleaded
guilty in the Superior Court to manslaughter, assault and battery by means of a
dangerous weapon causing serious bodily injury, and assault and battery by
means of a dangerous weapon (ABDW).  The
convictions stemmed from a confrontation in June of 2008, which began when the
victim returned home to find the defendant and another man on his porch.  The victim demanded that the defendant leave,
and the defendant refused.  The situation
escalated into a fight.  The defendant
began to leave, and the victim threw gravel at him.  The defendant then returned and struck the
victim twice with a knife.  The victim
died from his wounds.
      At the plea hearing, the Commonwealth and
the defendant recommended that the judge place the conviction of ABDW-SBI on
file.  The judge asked, "Could you
tell me the circumstances under which a case if I place it on file would be
removed from file and for what term?" 
The prosecutor responded:
"I would be
asking that it be placed on file for the same period of probation that the
Commonwealth and defense would be requesting on the other, which is a period of
5 years' probation from and after [the sentence for manslaughter]. 
"I would
suggest that the circumstances that would give rise to it being removed would
be the commission of some similar offense."
The prosecutor
then clarified that a similar offense would be "[s]imilar to the offense
charged, assault and battery [by means of] a dangerous weapon causing serious
bodily injury."
      The judge ultimately sentenced the
defendant to nine to twelve years on count one, the manslaughter charge, and
five years of probation thereafter on count three, the ABDW charge.  The judge placed count two, the ABDW-SBI
conviction, on file, to which the defendant consented.  As to count two, the clerk stated:  "that may be pulled out of file and
sentenced upon if a similar infraction occurs within the next five years or
during your probationary period."
      The defendant's probation began in August
of 2019.  On the morning of June 14,
2020, the police responded to a report of two women and one man fighting at a
sober living facility in Nashua, New Hampshire. 
The officers entered a hallway and found the women in a room with a
damaged door; the women yelled, "he threatened us with a knife."[2]  The defendant then entered the hallway.  The officers seized him and retrieved a knife
from his waistband.  They arrested the
defendant.
      The women reported later that day that the
defendant had stood outside of their room, singing songs and making sexual
remarks to them, and repeatedly entered their room without asking.  His demeanor became more aggressive, and the
women told him to leave their room and closed the door.  The defendant then kicked in the door and
entered the room, yelling at them.  He
lifted up his shirt to reveal a knife tucked in his waistband.  One of the women asked if the defendant would
stab her, and the defendant responded that he would if necessary.
      As a result of this incident the defendant
pleaded guilty to, among other crimes, reckless conduct with a deadly weapon
for kicking in the door.  See N.H. Rev.
Stat. Ann. § 631:3, I ("A person is guilty of reckless conduct if he
recklessly engages in conduct which places or may place another in danger of
serious bodily injury"), and § 631:3, II ("Reckless conduct is a
class B felony if the person uses a deadly weapon").  Other charges, including criminal threatening
with a deadly weapon, N.H. Stat. Ann. § 631:4, were nol prossed.
      Subsequently, in August of 2022, while
incarcerated at the Middlesex house of correction in Billerica, the defendant
punched another inmate multiple times. 
The other inmate suffered an injury to his face.  This incident was captured on videotape.  The defendant was charged in Lowell District
Court with assault and battery.
      In December of 2022, the Commonwealth
moved to remove the ABDW-SBI conviction from the file and sentence the
defendant on that count.  Following a
hearing, the motion judge, who was not the sentencing judge, allowed the
Commonwealth's motion.  The judge
concluded that "the sentencing judge's intent was to incentivize [the
defendant] away from engaging in any violent conduct similar to that which
formed the basis of the ABDW-SBI charge: 
a physical altercation with another person," and that by his
conduct in New Hampshire and Billerica, the defendant had committed a
"similar offense" to ABDW-SBI.[3]
      Discussion.  1.  The
"similar infraction" condition. 
The defendant argues that the judge abused her discretion in determining
that he committed "similar" offenses to ABDW-SBI in New Hampshire and
Billerica, and that his case should not have been removed from the file.[4]  To resolve that question, however, we must
first determine the procedures and standards that apply to a motion to remove a
conviction from the file for sentencing, as well as our own standard of review
on appeal.
      The procedure of placing cases on file
after conviction has a long history in this Commonwealth, which is discussed in
the Supreme Judicial Court's opinion in Commonwealth v. Simmons, 448 Mass. 687
(2007).  At common law, a judge could place
a case on file after a guilty verdict, where "public justice [did] not
require an immediate sentence," with the consent of the defendant and the
prosecution, and "upon such terms as the court in its discretion may
impose."  Simmons, supra at 693-694,
quoting Commonwealth v. Dowdican's Bail, 115 Mass. 133, 136 (1874).  This practice served as a "predecessor
to modern probation."  Simmons,
supra at 693.
      In 2007, in Simmons, the Supreme Judicial
Court reaffirmed the vitality of this practice, but called for a rule to be
promulgated addressing the procedure for filing cases.  See id. at 699-700.  The Supreme Judicial Court thereafter
promulgated rule 28 (e) of the Rules of Criminal Procedure.  See Mass. R. Crim. P. 28 (e),
453 Mass. 1501 (2009).  As relevant here,
the rule states that when placing a case on file, the judge may, if both
parties consent, "specify any events that may cause the case to be removed
from the file."  Id.  The rule does not, however, state the
procedures to be followed in removing a case from the file, other than stating that
the standard of proof is "preponderance of the evidence."  Mass. R. Crim. P.
28 (e) (ii), as amended, 489 Mass. 1502 (2022).
      Although the question has never been
expressly decided, the parties suggest, and we agree, that we should look to
the process used in probation violation proceedings as a template when removing
a case from the file.  Our courts have
recognized that filing cases after conviction is a "predecessor to modern
probation," Simmons, 448 Mass. at 693, and the Reporter's Notes to rule 28 (e)
describe the process of probation violation hearings as "the closest
analogy to removing a case from the file." 
Reporters' Notes to Rule 28 (e), Mass. Ann. Laws Court Rules, Rules
of Criminal Procedure (LexisNexis 2025) (2008 Reporters’ Notes).  Accordingly, the procedures for sentencing a
defendant on a filed case generally should mirror the procedures for probation
violation hearings.  This includes, for
example, the types of evidence that may be considered.[5]  See Commonwealth v. Durling, 407 Mass. 108,
117-118 (1990) (probation violation may be shown by substantially reliable
hearsay); 2008 Reporter's Notes, citing Commonwealth v. Holmgren, 421 Mass.
224, 226 (1995) (looking to probation violation procedure for burden of proof
in removing case from file based on new criminal offense). 
      We further agree that our standard of
review is essentially the same as for review of a probation revocation.  We review the motion judge's allowance of the
Commonwealth's motion to sentence for abuse of discretion or other error of
law.  See Commonwealth v. Gelin, 494
Mass. 777, 783 (2024).  In particular, we
determine "whether the record discloses sufficient reliable evidence to
warrant the findings by the judge[, by a preponderance of the evidence,] that
[the defendant] had violated the specified condition[]."  Id., quoting Commonwealth v. Jarrett, 491
Mass. 437, 440 (2023).
      Here the defendant argues that the judge
erred in determining that the defendant's conduct was "similar" to
ABDW-SBI.  The defendant emphasizes that
his conduct lacked essential elements of ABDW-SBI -- in New Hampshire, he did
not commit a battery and did not cause bodily injury, and in Billerica, he
argues, he did not use a dangerous weapon or cause serious bodily injury.  The defendant also argues that the judge
abused her discretion by relying on the defendant's supposed conviction of
criminal threatening with a deadly weapon, where that offense had been nol
prossed.  The defendant points out that
the only evidence of this offense was hearsay that the defendant claims lacked
substantial reliability -- namely, police reports from New Hampshire.  The defendant ignores, however, that he
pleaded guilty to reckless conduct with a deadly weapon (the door) arising from
the same incident.  See Commonwealth v.
Ubeira-Gonzalez, 87 Mass. App. Ct. 37, 39 (2015), quoting United States v.
Broce, 488 U.S. 563, 569 (1989) ("A plea of guilty and the ensuing
conviction comprehend all of the factual and legal elements necessary to
sustain a binding, final judgment of guilt and a lawful sentence").
      The interpretation of an express condition
of filing a conviction, similar to the interpretation of a probation condition,
is a question of law and results in de novo review.  Commonwealth v. Medeiros, 95 Mass. App. Ct.
132, 135 (2019).  See United States v.
Gallo, 20 F.3d 7, 11 (1st Cir. 1994).  In
conducting such review, we read the express condition -- as we would a
probation condition -- "in a commonsense way."  Medeiros, supra at 138, quoting Gallo, supra
at 12.  Here, we are not persuaded by the
defendant's argument that a "similar" offense to ABDW-SBI must
contain all or most of the elements of ABDW-SBI.  Instead, we give "similar" its
commonplace meaning -- that is, sharing substantial commonalities, but not the
same.  Cf. Merriam-Webster's Collegiate
Dictionary 1161 (11th ed. 2007) (defining similar as, among other definitions,
"having characteristics in common"). 
The motion judge did not err in finding that on the facts of this case,
where in New Hampshire the defendant kicked down a door and threatened two
women with a knife (the same deadly weapon that supported the ABDW-SBI
conviction), and subsequently in Billerica battered another inmate repeatedly,
the defendant committed "similar" infractions to his underlying
offense.  
      Nor did the judge err in considering the
defendant's actions in threatening two women with a knife.  Although the criminal threatening charge was
nol prossed, the judge could permissibly consider the defendant's conduct if
proved by a preponderance of the evidence, just as with a probation
violation.  See Commonwealth v. Williams,
102 Mass. App. Ct. 626, 629 (2023).
      Here, while the evidence of the
defendant's threatening conduct -- the New Hampshire police reports -- was
hearsay, those reports bore substantial indicia of reliability, as defined in
our probation violation case law, and the judge could permissibly rely on them
to find a "similar infraction" had occurred.  See Durling, 407 Mass. at 118.  To determine the reliability of hearsay in
this context, a judge may consider:
"(1) whether
the evidence is based on personal knowledge or direct observation;
(2) whether the evidence, if based on direct observation, was recorded
close in time to the events in question; (3) the level of factual detail,
as compared to generalized and conclusory assertions; (4) whether the
statements are internally consistent; (5) whether the evidence is
corroborated by information from other sources; (6) whether the declarant
was disinterested when the statements were made; and (7) whether the
statements were made under circumstances that support their veracity"
(citation and alteration omitted).
Gelin, 494 Mass.
at 784-785.  Here, the police reports --
which the Commonwealth submitted with its sentencing motion -- bore several of
these indicia.  Specifically, the victims
of the assault in New Hampshire made their reports based on personal
observations made the same day as the incident. 
The victims' statements are detailed, and internally consistent with each
other and the reports of the responding police officers.  And as noted, the defendant pleaded guilty to
a separate offense (reckless conduct with a deadly weapon) based on the
incident described in the police reports, which provides strong support for their
veracity.
      For these reasons, the judge did not err
in determining that the evidence before her, including the police reports from
New Hampshire and the video recording from Billerica, demonstrated by a
preponderance of the evidence that the defendant committed a "similar
infraction" to his 2011 conviction of ABDW-SBI.
      2. 
Fair notice.  The defendant also
argues that the condition placed on the filing of his case, that he not commit
a "similar infraction," was unconstitutionally vague.  The defendant is entitled to certain due
process protections with respect to removing his conviction from the file --
once again, protections similar to probationers facing probation violation
proceedings.  As to probationers, while
they are not given the "full panoply of constitutional protections
applicable at a criminal trial," due process "requires that the
Commonwealth provide probationers with certain protections at surrender
hearings."  Durling, 407 Mass. at
112.  
      One such due process protection is the
requirement that express conditions for removing a case from the file
"provide reasonable guidance with respect to what activities are
prohibited."  See Commonwealth v.
Kendrick, 446 Mass. 72, 75 (2006).  See
also 2008 Reporter's Notes (noting the requirement under rule
28 [e] [ii] that "the defendant [] receive notice of the reasons
why the case can be removed from the file").  We also adopt for this context the standard
for determining when a probation condition satisfies the notice requirement --
whether a condition provides at least "an imprecise but comprehensible
normative standard so that [people] of common intelligence will know its
meaning."  Kendrick, supra, quoting
Commonwealth v. Orlando, 371 Mass. 732, 734 (1977).
      We analyze the defendant's vagueness
challenge "as applied" -- that is, in light of the facts of the
case.  See Commonwealth v. Hamilton, 95
Mass. App. Ct. 782, 784 (2019) (analyzing vagueness challenge to probation
condition, after finding of probation violation, as as-applied challenge).  Furthermore, in determining whether a
probation condition provides proper notice of forbidden conduct, our courts
have emphasized that a condition should be read "with due regard to the
circumstances in which it was imposed." 
Kendrick, 446 Mass. at 75.  For
example, in Kendrick, the probationer pleaded guilty to two counts of indecent
assault and battery on a child; he used his car and dog to lure his
victims.  He was sentenced to probation,
and the judge added the condition that he have no contact with children under
the age of sixteen.  Id. at 73.  While on probation, the defendant attended a
car show at which children under sixteen were in attendance -- and brought his
dog and displayed his car.  Id. at
74.  The court found that the "no
contact" condition provided sufficient notice, as it communicated to a
reasonable person that the defendant's actions at the car show constituted a
probation violation.  See id. at
76-77.  Furthermore, the court noted that
"[a]ny doubt that the conduct was forbidden by the probation condition is
dispelled by its similarity to his conduct during his prior offenses where he
used the car and the dog to establish relationships with his
victims."  Id. at 77.
      Similarly, in the present case a person of
ordinary intelligence would know that kicking down a door and threatening two
women with a knife, and repeatedly battering an inmate, would constitute
"similar" offenses to ABDW-SBI and accordingly constitute a
triggering condition to remove the ABDW-SBI conviction from the file.  In any event, the defendant's 2020 conduct in
New Hampshire shares such similarity to the underlying conduct in the 2011
ABDW-SBI conviction, including the escalation of a fight and the use of a knife
(to injure in 2011, and to threaten in 2020), that "[a]ny doubt that the
conduct was forbidden . . . is dispelled."  Kendrick, 446 Mass. at 77.
Judgment
affirmed.

footnotes

[1] The filing of
a case should include a written consent, stating "any time limit or events
regarding removal from the file."  Mass. R.
Crim. P. 28 (e), 453 Mass. 1501 (2009).  Although there is no dispute here concerning
the time limits or events, such a written consent as required by the rule is a
wise practice.  We note that while rule
28 (e) uses the term "case," herein we have used
"case" and "conviction" interchangeably.

[2] These facts
are taken from the responding officer's report, which was presented to the
judge as an attachment to the Commonwealth's sentencing motion.

[3] The motion judge erroneously stated that the defendant had pleaded guilty
to criminal threatening with a deadly weapon; that offense was nol prossed.

[4] The
Commonwealth does not here argue that the defendant could have been sentenced
on the grounds that the defendant committed any criminal offense, or that a
related conviction had been overturned. 
Accordingly, we limit our review to whether the judge could remove the
case from the file because the defendant violated an express condition.

[5] Additional
due process protections would also apply when removing a case from the file,
including the right to notice and an opportunity to be heard, and to the extent
that there are genuinely contested facts, the opportunity for the defendant to
present witnesses and documentary evidence. 
See Commonwealth v. Costa, 490 Mass. 118, 123-124 (2022).